Hyman, C. J.
Plaintiff, as owner and lessor of the Orleans Hotel, a large building in' the city of New Orleans, having rent claims against Catharine Lachenmeyer and her husband, August Lachenmeyer, brought suits against them in the Sixth District Court of New Orleans, for the amount of rent due him, and sued out two writs of provisional seizure, whereby the sheriff of the parish of Orleans, James E. Dunham, was commanded tq seize provisionally, and take into his possession and safely keep until further order of the Court, the furniture, effects, goods and property in the hotel, and on which plaintiff claimed the landlord’s privilege.
The sheriff on the 2-lth of November, 1862, made the seizure.
By written order of plaintiff the defendants, Mr. & Mrs. Lachenmeyer kept the hotel open, for boarding and lodging, and used the provisions therein, and by agreement between them and plaintiff, the sheriff sold at public auction on 2d February, 1863, the property seized in lump to plaintiff.
Many of the articles seized were purloined by the defendants or others, between the time of the seizure and the sale, and plaintiff has sued in this suit the sheriff and his securities, to recover of them the value of the stolen articles.
The sheriff is responsible for any loss or injury sustained through his fault or neglect in enforcing processes of courts, but when the parties restrain him by orders or agreement, so that he has not control over property which he has been ordered to seize and keep, and loss results from such orders or agreements, he is not responsible to the parties therefor. The plaintiff, by permitting the property seized to be used in the manner stated above, gave opportunity for persons to purloin the articles,'and he cannbt fix responsibility on the sheriff for consequences of his own acts. The sheriff and his securities are appellants, from a judgment against them. Let it be reversed, and let there be judgment against plaintiff for costs.
• Petition for a Rehearing, by plaintiff and appellee. — The Court, in the opinion rendered in favor of the defendants, appears to have overlooked some material facts, the consideration of which the plaintiff believes will induce it to change the decree herein rendered.
By written orders, found atpages 110 and 111 of the record, Mrs. Lachenmeyer, the lessee, was allowed to use such wines, liquors and provisions as she might require for the use of the hotel. This permission was given *89 on the 25th. November, 1862, the day after the provisional seizure had issued. The sheriff’s keeper informs us there were four or five boarders in the house. The inventory of the movables seized was made, it seems, on the said 25th November.
Tho Court says, that “ when parties restrain the sheriff by orders or agreements, so that he has no control over property which he has been ordered to seize and keep, and loss results from such orders or agreements, he is not responsible to the parties therefor, ” and that ‘ ‘ the plaintiff by-permitting the property seized to be used .in the manner stated above,” (i. e., keeping the house open as a hotel and using the provisions therein) “gave opportunity for persons to purloin the articles, and he cannot fix the responsibility on the.sheriff for consequences of his own acts.”
It will, we presume, be conceded, that under a writ of provisional seizure for rent, a landlord has no right to shut up the house leased, and prevent the tenant from occupying and using it. The sheriff, in executing the writ, may, however, remove the movables he seizes from the leased premises, or he may leave them therein, and hold possession thereof through guardians or keepers, whom he appoints to take care of, and watch over the same.
The sheriff could not conveniently have removed the furniture of a large hotel, without great expense, and great risk of damage and loss in transportation. Hence, the furniture seized was allowed to remain in the hotel.
Now the sheriff, at the instance of the plaintiff’s agent, on the very day on which the written order of plaintiff was given, authorizing the use by the tenant of the provisions for the boarders, viz: on the 25th November, made an inventory of all the property which he had seized.
Why was this done; if not for the very purpose of establishing beyond cavil, what property he had taken under his care, and would be responsible for? Did he, on that day the inventory was made by him, inform the plaintiff that he would not hold himself responsible for any of the property seized, because he considered that the written orders of the plaintiff impeded or obstructed him in the discharge of his duty as sheriff?
Did he, at any time after the seizure, give the plaintiff or his agent, the slightest intimation that any of the articles seized were disappearing, and that he could not prevent their being purloined, owing to the fact that the house was kept open as a hotel ?
No; for seventy-one days that he had his keepers on the premises, from the 24th November, 1862, to the 2d February, 1863, (the day of sale) nothing is said about there being any article missing. Two-thirds of the furniture in that large hotel was carried away, wardrobes, bedsteads, bureaux, furniture of the heaviest description. (See the list of twenty-three pages in the record.) And does anyone, at any time, apprise the plaintiff of the fact? No. How then, and when does he discover that all this large amount of movable property has disappeared? Why, when he comes to claim possession of the same as the purchaser under the sheriff’s sale!
Surely, whole sets of household furniture, filling some three dozen rooms iii a hotel, could not be removed without the kno “ lodge of the sheriff’s keepers, if they kept any watch over the property. A bedstead, an armoire or a bureau, are not articles that a boarder could have hidden under an overcoat, or removed without being both heard and seen.
' But be this as it may, the sheriff has not offered a tittle of evidence to show how those goods disappeared, and the testimony of his very keepers betrays the grossest negligence. For one of them states: “Iwas placed there as keeper two or three days after the seizure, and remained there as keeper until the sale. I was in company with another keeper, Mr. Lehmann, during the whole time. Lehmann was-the keeper during the day, and I during the night.” (R. p. 101.) And he adds: “I slept in the hotel at night.” (R. p. 102.) He evidently agreed with Dogberry’s watch *90 man, that “tho duty of the watch is to sleep.”
The plaintiff is not only led to believe that all the property seized is in the leased premises, but the sheriff advertises the whole for sale as still in his possession, and in accordance with the inventory taken by himself. Nay, he reads the whole inventory at the sale, to inform bidders as to what he was offering for sale. The plaintiff thereupon bids $3,000 on the furniture, and it is adjudicated to him. When he goes to take possession Of the property sold, lo! and behold ! two-thirds of the furniture had vanished !
By the advertisement, the sheriff informed the public and the plaintiff, that he still had the goods in his possession. And when he comes to deliver them to the purchaser they are not found. At what time did they disappear, no one seems to know.
The plaintiff is now told that by allowing the hotel to be kept open and, provisions used, he so interfered with the sheriff’s keeping as to exonerate him from any liability.
Has the Court noticed the fact that the sheriff charged and was paid $284 for the keeping, say $4 per day from the 24th November, 1862, to the 2d February, 1863? (See R. p. 189.) What was he paid that sum for? To keep and guard the movable property'wkich had been seized. Can he now, after he has received that compensation which he was only authorized to claim for safely keeping the property, tell the plaintiff: “I am in no way responsible to you. It is true, I undertook to keep the furniture seized, but as you allowed the hotel to be kept open and provisions, used, although I did not object to it, and continued to keep the property, I was relieved from all responsibility, and was entitled to my pay, although every piece of furniture had been taken away, and I could give you no information as to the cause of its disappearance.”
Can such an answer meet with the approbation of the Court? No. The plaintiff cannot believe that the sheriff will be allowed to make him pay for an inventory which was to indicate what the sheriff had seized, and would have to account for, and to charge and receive a liberal compensation for the safe-keeping of the property seized, and then be allowed to escape liability for any portion of such property, on the excuse which he has set up in this case.
Rehearing refused.